UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ANA D.,                                                    :
          Plaintiff,                                    :
                                            :
          v.                                                   :          C.A. No. 23-387WES
                                            :
MARTIN O'MALLEY,                               :
Commissioner of Social Security,            :
          Defendant.                                  :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

A "younger" individual, Plaintiff Ana D. is a high school graduate with a two-year technical college degree who worked as a customer service representative until 2018. On June 3, 2021, Plaintiff filed her second application for disability insurance benefits ("DIB").[1] Plaintiff's date-last-insured is December 31, 2024. Tr. 17.

On application, Plaintiff alleged that she became disabled by pain due to right arm epicondylitis ("tennis/golf elbow"), left arm pain and depression. As her application proceeded through the administrative process, other pain-causing impairments arose, including spine disorder with lumbar radiculitis, obesity, planar fasciitis of the left foot, fibromyalgia, and migraine among others; also considered were Plaintiff's complaints of pain in the hip, leg, neck, chest wall, hands, heels, that is, "pain in almost all her body," Tr. 483. An administrative law judge ("ALJ") accepted as persuasive the findings of a non-examining psychologist and a non-examining psychiatrist that Plaintiff's depression and anxiety, exacerbated by pain and fatigue, would limit her ability to concentrate, persist and attend, carry out detailed instruction and complete a normal work day at a consistent pace, but not to the point that would preclude all

---

[1] Plaintiff's first DIB application was denied by an administrative law judge on September 1, 2020. Therefore, the alleged onset date that is effective for the second application is September 2, 2020.

work.  The ALJ also found persuasive the findings of two non-examining physicians who focused on the relatively benign somatic findings on examination and concluded that none would "significantly limit the claimant's ability to perform basic work activities" so that none amounts to a severe somatic impairment at Step Two.  In reliance on these non-examining sources and his own nuanced analysis of the evidence of record, and with no contrary opinion from any source, the ALJ found that Plaintiff's RFC[2] left her able to work and that she was not disabled at any relevant time.

Now pending before the Court is Plaintiff's motion for reversal of the decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application. ECF No. 11.  Plaintiff contends that the ALJ erred in three ways: first, at Step Two, she contends the ALJ erred in failing "even to identify [bilateral arm and hand pain and weakness] and its impact on her ability to function," ECF No. 11-1 at 17; second, also at Step Two she contends the ALJ erred in relying on the non-examining expert physicians because they were not privy to the diagnosis of fibromyalgia that was mentioned for the first time after their file review and they did not see one-hundred pages of physical therapy records that pertain to an earlier period but were not submitted until after the file review; and, third, she contends the ALJ erred in his treatment of her subjective allegations of pain.   Defendant has filed a counter motion for an order affirming the Commissioner's decision.  ECF No. 13.  The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

I.      **Standard of Review**

---

[2] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g), 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding. Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103). Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at

30.  The Court does not reinterpret or reweigh the evidence or otherwise substitute its own

judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022

WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

If the Court finds either that the Commissioner's decision is not supported by substantial

evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim,

the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42

U.S.C. § 405(g).  Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3,

2015.  If the Court finds that a judicial award of benefits would be proper because the proof is

overwhelming, or the proof is very strong and there is no contrary evidence, the Court can

remand for an award of benefits.  Sacilowski v. Saul, 959 F.3d 431, 433, 439-41 (1st Cir. 2020);

Randy M. v. Kijakazi, C.A. No. 20-329JJM, 2021 WL 4551141, at *2 (D.R.I. Oct. 5, 2021),

adopted by text order, (D.R.I. Oct. 28, 2021).

## II.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a).  The impairment must be severe,

making the claimant unable to do previous work, or any other substantial gainful activity which

exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §

404.1520(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not

disabled.  Id. § 404.1520(a)(4)(i).  Second, if a claimant does not have any impairment or

combination of impairments that significantly limit physical or mental ability to do basic work

activities, then the claimant does not have a severe impairment and is not disabled.  Id. §

404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20

C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if a

claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id.

§ 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and

past work) prevent doing other work that exists in the local or national economy, a finding of

disabled is warranted.  Id. § 404.1520(a)(4)(v).  Significantly, the claimant bears the burden of

proof at Steps One through Four, but the Commissioner bears the burden at Step Five.

Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five

step process applies to DIB claims).

### B.    Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case

record.  See 20 C.F.R. § 404.1520c.  A "medical opinion" is defined in the regulations as a

statement that identifies specific functional "limitations or restrictions" "about what [claimants]

can still do despite their impairments."  20 C.F.R. § 404.1513(a)(2).  For purposes of

documenting an impairment, a medical opinion must come from an "acceptable medical source,"

which includes a physician, a psychologist, a licensed advanced practice registered nurse or a

licensed physician assistant opining within the scope of licensed practice.  20 C.F.R. § 404.1502.

The most important factors to be considered when the Commissioner evaluates the

persuasiveness of a medical opinion are supportability and consistency; these are usually the

only factors the ALJ is required to articulate.  20 C.F.R. § 404.1520c(b)(2); Elizabeth V. v.

O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by

text order (D.R.I. Apr. 19, 2024).  Supportability "includes an assessment of the supporting

objective medical evidence and other medical evidence, and how consistent the medical opinion

or . . . medical finding[] is with other evidence in the claim."  Revisions to Rules Regarding the

Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).

Other factors that are weighed in light of all of the evidence in the record includes the

medical source's relationship with the claimant and specialization, as well as "other factors" that

tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 404.1520c(c)(1)-

(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859.  "A

medical opinion without supporting evidence, or one that is inconsistent with evidence from

other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Revisions to

Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.  Medical source

findings/opinions may not constitute substantial evidence if rendered by a source who was not

privy to evidence that would materially detract from the force of the findings.  Jonathan G. v.

Kijakazi, C.A. No. 22-107MSM, 2022 WL 17580663, at *6 (D.R.I. Dec. 12, 2022), adopted,

2023 WL 4077849 (D.R.I. May 3, 2023); Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018

WL 4693954, at *3 (D.R.I. Sept. 30, 2018).

### C.    Step Two Determination

Step Two is a screening device used to eliminate applicants "whose impairments are so

minimal that, as a matter of common sense, they are clearly not disabled from gainful

employment."  McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1122 (1st Cir.

1986).  At Step Two, Plaintiff has the burden to show that he had a "medically determinable"

physical or mental impairment(s) that significantly limited his ability to do basic work activity at

the relevant time.  Luz R. v. Saul, C.A. No. 19-00307-WES, 2020 WL 1026815, at *6 (D.R.I.

Mar. 3, 2020), adopted by text order (D.R.I. Mar. 30, 2020).  An error at Step Two does not

require remand as long as the sequential analysis continues and limitations caused by symptoms

related to the overlooked impairment are incorporated into the RFC.  White v. Colvin, No. 14-

171 S, 2015 WL 5012614, at *8 (D.R.I. Aug. 21, 2015); see Courtemanche v. Astrue, No. CA 10-

427M, 2011 WL 3438858, at *15 (D.R.I. July 14, 2011) (any error at step two is harmless

"absent any specific showing by Plaintiff of any particular functional limitations attributable to

[the impairment] that the ALJ failed to consider in making his RFC finding"), adopted sub nom.

Courtemance v. Astrue, 2011 WL 3421557 (D.R.I. Aug. 4, 2011).

> **D.    Claimant's Subjective Statements**

A reviewing court will not disturb a clearly articulated credibility finding based on

substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  Guidance in

evaluating the claimant's statements regarding the intensity, persistence and limiting effects of

subjective symptoms, including pain, is provided by SSR 16-3p, 2017 WL 5180304, at *2-3

(Oct. 25, 2017), which directs the ALJ to consider the entire case record, including the objective

medical evidence, the individual's statements, statements and other information provided by

medical sources and other persons, and any other relevant evidence, as well as whether the

subjective statements are consistent with the medical signs and laboratory findings.  Id. at *2-5.

As the First Circuit has emphasized, in the absence of direct evidence to rebut a claimant's

testimony about subjective symptoms, such statements should be taken as true.  Sacilowski, 959

F.3d at 441; Tegan S. v. Saul, 546 F. Supp. 3d 162, 169 (D.R.I. 2021).  That is, if proof of

disability is based on subjective evidence and a credibility determination is critical to the

decision, the subjective statements must either be explicitly discredited or the implication of lack

of credibility must be so clear as to amount to a specific credibility finding.  Foote v. Chater, 67

F.3d 1553, 1561-62 (11th Cir. 1995); Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL

3930347, at *4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021).

     **E.**     **Fibromyalgia**

     To provide guidance to adjudicators facing disability claims based on fibromyalgia, the

Commissioner issued SSR 12-2p.  Emphasizing that subjective pain and fatigue can be disabling,

SSR 12-2p sets out fibromyalgia's diagnostic criteria.  Patrick F. v. Kijakazi, C.A. No. 22-

212MSM, 2023 WL 2770389, at *3 (D.R.I. Apr. 4, 2023), adopted, 2023 WL 6004594 (D.R.I.

July 10, 2023).  Specifically, SSR 12-2p provides that, "[a]s in all claims for disability benefits,

we need objective medical evidence to establish the presence of an MDI [medically determinable

impairment]" based on a diagnosis provided by a licensed physician who performed a physical

examination.  SSR 12-2P, 2012 WL 3104869, at *3 (July 25, 2012).  The diagnosis must be

based on either (1) three criteria based on those listed in the 1990 ACR Criteria for the

Classification of Fibromyalgia; or (2) three criteria based on those listed in the 2010 ACR

Preliminary Diagnostic Criteria.  Id. at *2.  Once the claimant sustains his burden of establishing

that fibromyalgia is an MDI that could reasonably be expected to produce the pain or other

symptoms alleged, the analysis proceeds to consider the intensity and persistence of pain and

other symptoms to determine their impact on the claimant's ability to function.  Id. at *5.

     For fibromyalgia as for any other MDI, "[a] claimant's testimony about symptoms is

insufficient to establish a severe impairment at Step 2 in the absence of medical evidence."

Teves v. Astrue, Civil No. 08-246-B-W, 2009 WL 961231, at *4 (D. Me. April 7, 2009), adopted,

2009 WL 1211015 (Apr. 30, 2009); see Roberts v. Colvin, C.A. No. 14-289-M, 2015 WL

1040672, at *9-10 (D.R.I. Mar. 10, 2015).  However, if the ALJ errs in rejecting fibromyalgia as

an MDI at Step Two, but the analysis continues with appropriate regard for the pain and other

symptoms alleged by the claimant, the error is harmless and the ALJ's determination should be affirmed.  Luz R., 2020 WL 1026815, at *8-9.

III.     **Analysis and Recommendations**

Plaintiff argues that the ALJ's Step Two finding regarding bilateral epicondylitis is flawed because the ALJ did not even identify bilateral arm and hand pain and weakness and its impact on her ability to function.  This argument founders because its foundation is incorrect.  Far from failing even to identify these issues, the ALJ's Step Two analysis includes an explicit analysis of bilateral epicondylitis and its impact on Plaintiff's ability to function.  Tr. 18-19.  Thus, in the Step Two portion of his decision, the ALJ devoted explicit attention to Plaintiff's history of bilateral epicondylitis, to the treatment notes of the treating orthopedist Dr. Leonard Hubbard reflecting conservative treatment and to the reality that treatment of bilateral epicondylitis was not sustained after December 2020, that is, well less than twelve months after the date of onset. Id.  Further, the ALJ's Step Two finding regarding bilateral epicondylitis appropriately is based not only on the medical record, but also on the expert findings of Dr. Charles Kahn and Dr. Henry Laurelli, the non-examining expert physicians, who deployed their medical and Social Security expertise to find that bilateral epicondylitis is not "severe," as the term is meant at Step Two.  The record contains no contrary opinion nor does the post-file review record contain evidence of worsening of this condition.  I find no error in the ALJ's approach.

Second, invoking Virgen C., 2018 WL 4693954, at *3, and progeny, Plaintiff contends that the Court should focus on two matters that had not become part of the medical record until after the non-examining expert file review was completed.  She argues that, because they did not see these materials, the non-examining-physician findings cannot constitute substantial evidence so that the ALJ's reliance on them at Step Two is error requiring remand.

The Court focuses first on the post-file review reference to "fibromyalgia." This diagnosis is mentioned for the first time in records that did not exist at the time of the non-examining physician review; further, these records were not submitted until after the ALJ hearing.[3] Thus, in a March 2022 treating note of Plaintiff's primary care physician, Dr. Levis Guzman, there is a reference to a diagnosis of "chronic fatigue" (not fibromyalgia) with a prescription for duloxetine. Tr. 823. At the next appointment, in July 2022, Dr. Guzman for the first time listed "fibromyalgia" as a diagnosis, although his notes do not reflect when or how he made the diagnosis. Tr. 838. Nor did the rheumatologist (Dr. Aruna Tokas), who saw Plaintiff June and July 2022 based on a referral for possible lupus (which was ruled out), diagnose fibromyalgia. Instead, Dr. Tokas noted (vaguely) that Plaintiff has "tender points" consistent with such a diagnosis and had recently begun medication to treat fibromyalgia. Tr. 878 ("she has no synovitis on exam and has tender points for fibromyalgia, however she is already on a few fibromyalgia medications."). In ruling out lupus and terminating the referral, Dr. Tokas "[d]iscussed [with Plaintiff that] she is already on fibromyalgia medications and recently went on duxetine which is helping." Tr. 892. Importantly, Dr. Tokas's detailed examination reflects entirely normal findings, except for obesity, tenderness to palpation over epicondyles, AC joints and trochanter region, crepitus in knees and a rash on the forehead. Tr. 884. Also significant is Dr. Tokas's treatment recommendation for pain – "exercise and conservative management and f/u with her PCP." Tr. 892.

Recognizing these records had not been seen by the non-examining physicians, the ALJ accepted the diagnosis of fibromyalgia despite the lack of a definitive diagnosis as required by

---

[3] At the ALJ hearing, Plaintiff's attorney advised the ALJ that the symptom of chronic pain and a finding on a blood test had resulted in a tentative diagnosis of lupus and a referral to a rheumatologist for a definitive diagnostic assessment. Tr. 42-43. The post-hearing encounters with the rheumatologist definitively ruled out lupus. Tr. 892. Fibromyalgia was not mentioned during the ALJ hearing.

SSR 12-2p, which sets out fibromyalgia's diagnostic criteria.  The ALJ appropriately focused his

analysis on the evidence of the intensity and persistence of pain and other symptoms to

determine their impact on Plaintiff's ability to function, noting (correctly) that once the diagnosis

of fibromyalgia was in the record, Plaintiff's treatment remained the same – "routine and

conservative" – with no evidence of increased impact on mobility, use of extremities, sitting,

standing, walking or performing postural or manipulative actions.  Tr. 19 (focusing on many

normal findings throughout record including normal gait and normal range of motion).  This

approach is consistent with the proposition that a "mere diagnosis of a condition says nothing

about its severity."[4]  Keach v. Berryhill, No. 17-cv-10133-ADB, 2018 WL 1440316, at * 12 (D.

Mass. Mar. 22, 2018).  Supporting the ALJ's finding are the largely normal physical examination

observations by both Dr. Guzman and Dr. Tokas.[5]  Tr. 839, 870.  The only contrary evidence is

Plaintiff's complaints, which continued throughout the period and were considered by the non-

examining physicians.  See Teves, 2009 WL 961231 (with fibromyalgia as for any other MDI,

claimant's complaints are "insufficient to establish a severe impairment at Step 2 in the absence

of medical evidence").

Based on the foregoing, I find no error in the ALJ's reliance on the non-examining

physicians despite the post-file review diagnosis of fibromyalgia.  In any event, even if the ALJ

erred in rejecting fibromyalgia as a severe impairment at Step Two, the analysis continued with

---

[4] The ALJ also relied on the reality that the newly made diagnosis of fibromyalgia cannot be the foundation for a finding of disability because it had not yet come close to meeting the durational requirement of twelve consecutive months.  Tr. 19.  Thus, to the extent that fibromyalgia amounts to an impairment that had begun to cause newly severe symptoms that materially impaired function, no error taints the ALJ's finding that it does not detract from the non-examining physician findings, because any such alleged worsening reflects a new impairment that had not restricted Plaintiff's RFC for the requisite period of time.

[5] While both Dr. Guzman and Dr. Tokas noted tenderness, this is not a new symptom.  The record reviewed by the non-examining physicians is replete with normal findings on examination except for tenderness, occasional muscle spasm and occasional positive straight leg raise.  E.g., Tr. 316, 378, 528.

appropriate regard for the pain and related fatigue; thus, this case is controlled by the well-settled principle that such an error is harmless.  See Luz R., 2020 WL 1026815, at *8-9.

Plaintiff's third Step Two argument is based on her contention the ALJ erred in relying on the non-examining expert physicians because they were not privy to one-hundred pages of physical therapy ("PT") records (Tr. 587-701) that she claims "validate her consistent complaints of bilateral upper extremity pain."  ECF No. 11-1 at 17.  This argument is unavailing because the PT in question (provided from January to July 2021) is not focused at all on Plaintiff's claim of severe somatic impairment due to arm pain.  It was prescribed to treat temporary shoulder and hip pain related to a December 2020 motor vehicle accident; by the end of March 2021, Plaintiff was ready for discharge with some lingering (pre-motor vehicle accident) pain in her hip and lower back.  Tr. 641.  After that, Plaintiff had aquatic therapy for her hip and back.  Importantly, these records reflect only "mild difficulty with lifting and carrying primarily due to arm issues." Tr. 647, 701.  That is, these records support, and do not detract from, the non-examining physician findings.

Finally, citing Sacilowski, 959 F.3d at 441, and Tegan S., 546 F. Supp. 3d at 169, Plaintiff contends the ALJ erred in discounting her subjective allegations of pain.  A threshold problem with this argument is that it ignores that the ALJ did not entirely discount Plaintiff's complaints of pain.  To the contrary, he found persuasive and relied on the non-examining psychologist/psychiatrist findings that pain was a significant factor in moderately limiting Plaintiff's ability to carry out detailed instruction, attend, persist, and complete a normal workday.  Tr. 88-89, 99-100 ("may need rest periods due to pain"; "will be inconsistent in ability to carry out detailed tasks due to pain and mental symptoms"; "slow to adapt to change due to anxiousness, pain, fatigue and reduced frustration tolerance"); Tr. 100 ("evidence from the

12

claimant's therapist, PCP and the CE report indicate a [history of] MDD and anxiety (panic disorder) exacerbated by chronic pain condition"). Similarly, the ALJ found persuasive[6] the portions of the report of the consulting examiner, psychologist Dr. Wendy Schwartz, who found that Plaintiff's ability to respond appropriately to customary work pressures "appears to be moderately-to-severely impaired" with a "mild to moderate constriction of interest" based in part on the observation that Plaintiff's functional limitations appear to be "because of physical pain." Tr. 524.

Thus, Plaintiff's "credibility" argument challenges only the ALJ's determination to discount Plaintiff's subjective claim that pain was somatically limiting. In the regard, the ALJ's determination is amply supported by substantial evidence that directly conflicts with Plaintiff's statements. By way of just one example, the ALJ pointed to Plaintiff's subjective claim of arm pain so severe that she could not even hold a phone after a short time. Tr. 24 (referencing function report, Tr. 267). He appropriately contrasted this claim with Plaintiff's activities (e.g., grooming, eating, dressing, preparing meals, doing chores, caring for her son and fiancé, shopping and driving), Tr. 26, and with the treating notes of Dr. Hubbard, the hand orthopedist who treated this condition, which reflect only minor/minimal tenderness on examination, Tr. 338, and that treatment ended in December 2020, soon after a related worker's compensation claim was denied, Tr. 378-79. Tr. 19. Also corroborating the ALJ's approach are the 2021 treating records, which reflect no treatment for arm pain by the primary care physician or the orthopedist or the pain specialists at the Brain & Spine Institute, as well as by the 2021 PT records, which reflect only "mild limits" on lifting and carrying. Tr. 647, 701. Further, in contrast to the cases

---

[6] Overall, the ALJ found the Schwartz report to be not entirely persuasive, with the adverse finding solely with regard to social limits, which he appropriately found to be internally inconsistent in the report and to be inconsistent with the balance of the record. Tr. 27.

on which Plaintiff relies, there is no treating source opinion to support Plaintiff's claim that she was more limited than the ALJ found. See Sacilowski, 959 F.3d at 436-37 (remand ordered because *inter alia* ALJ failed properly to address treating source who opined to disabling absenteeism and migraines); Tegan S., 546 F. Supp. 3d at 171 (remand ordered because error to ignore testimony about pain when "ALJ was presented with a record establishing a claimant . . . who supplied a treating source opinion from the rheumatologist endorsing the fibromyalgia diagnosis and its function-limiting pain").

I find no error in the ALJ's approach to Plaintiff's subjective statements.

## IV.    Conclusion

Based on the foregoing, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) be DENIED and the Commissioner's Motion for an Order Affirming her Decision (ECF No. 13) be GRANTED.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation. See Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 20, 2024